## STONE v. HAMMELL.*

### No. 13,024; September 2, 1889.

#### 22 Pac. 203.

**Suretyship—Action Against Principal by Surety.**—Where the maker of a note gives his sureties a mortgage to secure its payment, and the property is sold and the proceeds applied on the note, the maker cannot dispute the satisfaction of such mortgage in an action against him by a surety who has paid part of the note.

**Suretyship—Contribution and Reimbursement from Principal.**—Under Civil Code, section 2848, providing that a surety, upon paying the principal's debt, is entitled to enforce all the creditor's rights of action against the principal for the amount so expended, and to require his cosureties to contribute thereto, a cosurety, having so contributed by giving his own note to the paying surety, is entitled to reimbursement from the principal precisely as if he had paid the money to the creditor.

**Suretyship.**—Where a Surety on a Note Holds Security for the payment thereof, the creditor is not bound to require the application of such security to the payment before he can sue the sureties.

**Suretyship—Contribution.**—A Surety Who has Paid a Note and received contribution from a cosurety is not a necessary party to a suit by the latter against the principal for the amount contributed.

**Suretyship—Contribution—Limitation of Actions.**—Code of Civil Procedure, section 339, provides that an action on a contract

---

*For subsequent opinion in bank, see 83 Cal. 547, 17 Am. St. Rep. 272, 23 Pac. 703.

not in writing must be brought within two years. Section 351 provides that when the right of action against a party accrues during his absence from the state, the action may be brought within the time limited after his return. Held, that the surety's right of action for contribution against a cosurety who was absent from the state when the note was paid accrued on his return, and the cosurety's right of action against the principal accrued on his giving his note for the amount of such contribution within two years after returning.

Insolvency—Effect of Discharge.—The Rights of a Creditor are not Affected by the discharge in insolvency of his debtor, where neither the creditor himself nor his debt were within the jurisdiction of the court in which the proceedings in insolvency were had.

Insolvency.—The Discharge in Insolvency of a Debtor does not affect the rights of his surety on a note who subsequently contributes to the payment thereof.

Suretyship—Action Against Principal by Surety.—The records of a probate court, showing the insolvency of a deceased surety who had not contributed to the payment of the note, are admissible in evidence in an action by a cosurety against the principal.

APPEAL from Superior Court, Santa Barbara County; R. M. Dillard, Judge.

Action by H. P. Stone against James Hammell to recover $1,000 and interest. Judgment for plaintiff and defendant appeals. Code of Civil Procedure sections 337, 339, provide that an action founded upon a writing executed in said state must be brought within four years after the right of action accrues, and an action upon a contract, etc., not founded upon a writing, within two years thereafter. Section 351 provides that, when the right of action against a person accrues during his absence from the state, such action may be brought within the time limited after his return thereto. Civil Code sections 2847, 2848, provide that a surety, upon satisfying the obligation of his principal, is entitled to enforce every remedy which the creditor has against the principal, to the extent of reimbursing what he has expended, and also to require all his cosureties to contribute thereto.

Wells, Guthrie & Lee and S. W. Bouton for appellant; B. F. Thomas for respondent.

FOOTE, C.—This action was brought by the plaintiff to recover from the defendant the sum of $1,000 and interest.

It is alleged in the complaint that the plaintiff, with three other persons, became the sureties of the defendant upon a promissory note, payable to one Byron Stevens, for the sum of $3,000, the money borrowed, for which the note was given, being for the use and benefit of the defendant, and received and used by him alone; that the defendant neglected to pay the note, or any part of it; that Newell, one of the sureties, paid upon the note, as principal and interest, the sum of $3,855, of which sum the defendant repaid him the sum of $1,075 only; that the plaintiff, Stone, about the 1st of August, 1878, changed his residence from the state of California to the state of New York, and the said 1st of August left the state of California, and was absent therefrom until December, 1883; that about the 1st of March, 1884, Newell, the surety who had paid the promissory note to Stevens, demanded of Stone, the plaintiff, that he should pay the sum of $1,000, as plaintiff's pro rata share of the money which Newell had paid on account of their suretyship on the promissory note; that the plaintiff, on the 1st of March, 1884, made, executed, and delivered to Newell his promissory note in the sum of $1,000 in full satisfaction of the amount of money which the plaintiff should contribute to Newell for his payments for and on account of the promissory note to Stevens, and Newell gave to the plaintiff a receipt in full satisfaction for the plaintiff's liability to contribute to him for the payments he made as heretofore stated; that the defendant has not paid the plaintiff anything, either principal or interest, for the sum of $1,000 thus paid out for the defendant to Newell; that one of the four sureties, Hamilton, paid nothing on the note to Stevens, and contributed nothing to Newell, and that Hamilton died insolvent. The complaint was demurred to on the grounds (1) that it did not state facts sufficient to constitute a cause of action; (2) that it did not state facts sufficient to constitute a cause of action in this, "that it appears from said complaint that the plaintiff has not legal capacity to sue; second, that it appears upon the face of said complaint that the last payment made upon the note, set out in the first paragraph thereof, was made on the tenth day of January, 1881, by P. N. Newell, and that the cause of action, if any, accrued on said tenth day of January, 1881, in favor of said P. N. Newell, and that the cause of action in favor of said P. N. Newell, if any, is

barred by the statute of limitations, and that the cause of action, if any, was barred by the statute of limitations, at the time of the pretended demand and the making of the note for $1,000 by plaintiff to P. N. Newell, on the first day of March, 1884, alleged in said complaint; that said complaint is ambiguous, unintelligible and uncertain in this, that it does not sufficiently appear from said complaint whether or not the note referred to in the eighth paragraph thereof was ever paid by plaintiff; that it does not sufficiently appear from said complaint that the plaintiff ever paid any money whatever for or on account of defendant; that it does not sufficiently appear from said complaint that the plaintiff's cause of action alleged in said complaint is not barred by the statute of limitations; that there is a defect in parties plaintiff to said action, in this, that it appears from said complaint that P. N. Newell should be made plaintiff to said action, instead of the plaintiff herein; that said complaint does not, nor does any paragraph thereof, severally state facts sufficient to constitute a cause of action.'' The demurrer was overruled, and the defendant answered, objecting to the complaint that it did not state facts sufficient to constitute a cause of action; that the plaintiff had no legal capacity to sue; that the cause of action, if any, accrued on the 10th of January, 1881, in favor of Newell, and that it is barred by the statute of limitations under the provisions of sections 337 and 339 of the Code of Civil Procedure; denying that the time of payment of the note to Stevens was extended to the 1st of July, 1880, or that he neglected to pay the note, or any part of it; and alleging that before the note became due he had mortgaged certain real property to the sureties on his note to Stevens, sufficient in value for the payment and satisfaction of the note, and that subsequently he conveyed to Newell, one of the sureties, a portion of the premises thus mortgaged of the value of $1,400, which the sureties afterward sold and applied the proceeds to the payment of the Stevens note. He further claimed that the payments alleged to have been made by Newell were from the proceeds of the property mortgaged and conveyed to the sureties. He denied that he had only paid $1,075 of the amounts paid by Newell on the Stevens note, and alleged that he paid the whole of what Newell paid, and that nothing is due from him to Newell. All the other allegations of the com-

plaint are denied. For further defense the answer set up that if Stone contributed anything toward the repayment of Newell for what he had paid out for and on account of the defendant, such payment was entirely voluntary, and without any consideration good in law, and that the plaintiff ought not to recover against him because of his discharge in insolvency on the twenty-fourth day of December, 1879, by the county court of Santa Barbara county, California. The answer was afterward, upon leave of the court, amended so as to defend the action on the ground that, so far from neglecting or refusing to pay the Stevens note, the defendant, before the note became due, on the fifth day of August, 1878, executed and delivered to the plaintiff and Newell a deed absolute in form, but by way of a mortgage, conveying to Stone and Newell certain real estate in Santa Barbara county, fully described in said deed in trust, to sell and dispose of the property conveyed, and to apply the proceeds in satisfaction of the Byron Stevens note, on which Stone and Newell were the defendant's sureties; that the conveyance thus made was accepted by Stone and Newell in trust for the purposes above specified, and was, at Stone's request, recorded on the 13th of August, 1878, in the proper office. It is further alleged that the property so conveyed was more than sufficient in value for the payment and satisfaction of the note to Stevens, and interest; that it was worth $5,000, and that plaintiff and Newell, after its conveyance to them, and before the first day of March, 1884, disposed of a large portion of it for the sum of $3,500, and that at the time of the commencement of this action there remained a portion of the property thus conveyed undisposed of and held by the sureties of the value of $500. A demurrer was filed to this amendment, on the grounds, first, that it did not state facts sufficient to constitute a cause of action; second, that, in so far as it refers to any mortgage or deed of trust, it does not state any fact constituting any defense. "Said instrument, if a mortgage, has become extinguished by lapse of time, and could not have been enforced when this action was commenced, nor could it be now enforced." This demurrer was overruled, and the cause was tried without a jury, upon the issues made by the complaint and answer as amended. The plaintiff had judgment as

prayed for. From that and an order refusing a new trial this appeal is prosecuted.

One of the reasons urged by the defendant why the judgment cannot stand is, to use his own language, "that the plaintiff could not sue the defendant on his implied promise on the note, because his remedy on the note was merged in a superior remedy, i. e., the mortgage given by defendant to his sureties." In support of this proposition he argues that the remedy in assumpsit on an implied contract originally vested in the sureties against their principal, became merged on their accepting a mortgage security therefor, and their only remedy was an action for foreclosure. The fact which he relies on to uphold his legal proposition is that the mortgage given to all four of the sureties was never legally satisfied, because Byron Stevens, the payee of the note which the defendant and sureties had executed, was not a party to the satisfaction of the mortgage, and that, as the mortgage was not satisfied, the deed in form, which the court found to be in trust, but not a mortgage, was a mortgage, and was supplementary to the first mortgage, and the remedy of foreclosure of it could only be pursued. But Stevens has been paid from the proceeds of the property deeded to the sureties, so far as it was sold, whether it was a mortgage, or, as the court found, a deed in trust only for a specific purpose which was carried out, and he is not here complaining of the satisfaction of the mortgage. The person who does complain, and who seeks to have the mortgage declared unsatisfied, was a party to its satisfaction, and is excluded by his action in the premises from disputing its proper and legal satisfaction.

The further contention is made that the finding of the court, that the action is not barred by the statute of limitations, is against law. To support this claim the appellant seems to argue that when Stone executed and delivered his promissory notes, which were agreed to be taken as an absolute payment and reimbursement to Newell of Stone's share of the money paid out to Stevens by Newell, he (Stone) was under no legal obligation to do so; that he could have invoked the statute of limitations against Newell for this contribution. This seems to be based upon the proposition that although Stone was absent from the state during most of the time that Newell was making payments to Stevens, who was also a nonresident,

yet that the statute began to run in favor of Stone as soon as Newell paid the first installment of interest, $360, on the note, when Stone was in the state, and continued to run, notwithstanding his absence from the state after that time: Code Civ. Proc., sec. 351. The court found, upon sufficient evidence, that Stone, about the 1st of August, 1878, removed from the state of California to the state of New York, where he remained until December, 1883. Up to the time of Stone's removal Newell had not paid more than his share as surety, and all that he paid after that time, for which Stone was liable for contribution, was paid during Stone's absence from the state. Unless, therefore, this action was not brought until after the time had elapsed, prescribed by sections 337 and 339 of the Code of Civil Procedure, for the barring of the action after Stone's return, he (Newell) was not precluded from recovery by those statutes: Code Civ. Proc., sec. 351. Stone's right of action accrued on the 1st of March, 1884, when he reimbursed Newell for his expenditures by executing the promissory notes, which were taken as absolute payment for the liability of Stone to Newell for Stone's share of the money paid to Stevens, the payee of the note: Brandt on Suretyship and Guaranty, sec. 199. The statute did not begin to run against Stone until the 1st of March, 1884. He filed his complaint on the seventeenth day of September, 1885, less than two years after the statute began to operate, and was not barred. Newell's right of action against Stone was not barred, because the latter did not return to California until December, 1883, and Stone paid Newell by notes on the 1st of March, 1884.

In this connection the appellant claims that the payment by Stone's notes to Newell of Stone's pro rata of the money which Newell had paid to Stevens for the defendant was no payment or reimbursement affecting defendant on account of his liability on the Stevens note. But it seems to have been held in this and in most of the other states that the acceptance of a promissory note in satisfaction and payment of a debt due from one individual to another is payment of the first debt: Griffith v. Grogan, 12 Cal. 323, and cases cited. When Newell paid the money for the defendant as his surety in satisfaction of the Stevens note he had the right to be reimbursed by the defendant for what he expended in that

behalf: Civ. Code, secs. 2847, 2848; Estate of Hill, 67 Cal. 244, 7 Pac. 664. He had also the right to be reimbursed by Stone for whatever amount Stone, as cosurety, was liable to pay Stevens as his proportion, and which had been paid by Newell to Stevens. When Stone paid Newell his liability to him, by the execution of the promissory notes taken in absolute payment and satisfaction of the debt, then Stone had the right, as a surety for Hammell, to look to him for reimbursement, because then Stone occupied toward him pro tanto the same relation that Newell did in paying Stevens such amount, for Stone had paid to Newell, not only what he was bound to contribute to reimburse him, but also so much of what Newell had paid for the defendant, and to that extent Stone then stood toward the defendant as if he had originally paid so much of the debt to Stevens. Newell had the right, in the first instance, to give his note to the creditor, Stevens, in full satisfaction for the debt of the defendant, and could then have sued him without having paid the note: Brandt on Suretyship and Guaranty, sec. 181. Stone, having paid to Newell, to his satisfaction, by note, his pro rata contribution of what Newell had paid for the defendant to the creditor, had a right to be reimbursed to that extent by Hammell for the actual payment in money of that sum by Newell to Stevens. The matter stood just as if Stone, instead of Newell, had paid Stone's proportion in money to the creditor for Hammell, and Stone has the same right as Newell had when he paid the debt in money.

But it is claimed that Newell, at the time Stone executed the notes, had no right of action against Stone for contribution, because he had not exhausted the securities in his hands, had not sold all the land included in the deed in trust, and applied the proceeds to the payment of the Stevens note; that his failure to do this exonerated Stone from any liability to reimburse Newell for what he had paid Stevens. The authorities cited in support of this proposition are not in point. There is no evidence in the record but what Newell realized, as far as he could reasonably do so, all that could fairly be obtained from the sale of the property held in trust, and that, after applying it all to the payment of the Stevens note, he was out of pocket as much money as would have made Stone's share in contribution amount to what his notes called for.

There is no negligence, laches, or fraud shown in the matter, and Stone was liable to contribution when he gave his notes.

We perceive nothing of merit in the point made that Newell paid the debt voluntarily to Stevens without any liability to do so. The principal creditor, as it seems to us, could have sued the sureties whenever the note became due and remained unpaid. There was no necessity for him before doing so to have had the land held by the surety, Newell, as trustee, sold and the proceeds applied to the payment of his debt, even if it could have been done under the trust deed, for, as the record shows, this was done in good faith, and without any delay, by Newell, and the proceeds applied to the payment of the Stevens note.

The further point is made that the discharge of Hammell in insolvency discharged him of all indebtedness to Byron Stevens, the holder of the promissory note which the sureties executed with the defendant, and that the finding or decision of the trial court, that the insolvency court had no jurisdiction over Stevens, is against law; and that the discharge of the defendant in insolvency is a bar to the recovery of the plaintiff in this action. In its twelfth finding of fact, which is, we think, warranted by the evidence, the trial court found "that Byron Stevens, the payee of the said note mentioned in the first finding hereof, was not a resident of the state of California, and was absent therefrom during all the proceedings in the Matter of the Insolvency of James Hammell, and did not in any way submit either himself or said promissory note to the jurisdiction of the court in which such proceedings were had." This being so, Stevens was not affected in his rights by the discharge in insolvency as pleaded: Rhodes v. Borden, 67 Cal. 7, 6 Pac. 850, and cases cited. This discharge in insolvency left Newell and Stone still responsible to Stevens.

At the time of the insolvency proceedings Stone could not have brought suit against Hammell, because then Stone had paid out nothing as surety, and until he satisfied and paid Newell, there was no breach of the implied promise of Hammell to reimburse him: Brandt on Suretyship and Guaranty, sec. 199. If Stone had no debt against Hammell which was provable in insolvency, it cannot be that he is barred of recovery by the proceedings and discharge in insolvency which

took place prior to the time when his debt and right to sue Hammell accrued. In a case involving the same principle which is invoked here, it was said: ''The debt was not made certain until after the defendant's discharge. It is like the case of a surety paying a debt after the discharge of the principal. The debt must be certain and fixed at the time of the insolvent's assignment'': Buel v. Gordon, 6 Johns. (N. Y.) 126.

We perceive nothing in the point that Newell should have been made a party. He had paid the note and been paid by Stone his contribution. Stone then had the right of action upon an implied contract against the principal, Hammell, for reimbursement. The court found, upon evidence which is not challenged by any specifications of particulars of its sufficiency, that Hamilton, one of the sureties, died insolvent in 1878, and contributed nothing toward the payment of the note in the first instance by Newell, or repayment to him as a co-surety. But the objection is made that a certain record of the probate court proceeding offered and admitted in evidence was not competent, relevant, or material. We think that the evidence tended to show the financial standing and insolvency of Hamilton, and was properly admitted. The evidence was sufficient to support the findings attacked, and, perceiving no prejudicial error, we advise that the judgment and order be affirmed.

We concur: Belcher, C. C.; Gibson, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment and order are affirmed.